KELSEY, J.,
concurring in part and dissenting in part.
I concur in the majority’s reasoning and disposition as to Count I, burglary of the Webb residence. I respectfully dissent as to Count II, burglary of the McGowan residence, because I conclude that the record supports applying the same reasoning and disposition to Count II.
Just as the intentional act of committing theft in the Webb residence was not in dispute, the intentional act of resisting an officer after that burglary was not in dispute. Officer Baker, after being dispatched to the Webb residence shortly after 5:00 a.m. and observing that it had been broken into, saw someone beside the house who immediately ran away in spite of the officer’s multiple commands to stop. It was undisputed that Officer Baker saw this person jump a fence and wade through a holding pond with water in it, emerging on the other side and continuing into a wooded area of the neighborhood. A K-9 officer tracked an individual running away from , the pond. Mr. Long’s counsel did not dispute any of those facts.. He expressly argued .that Officer Baker “saw the individual coming on the side of the house” and “Officer Baker only saw one person.” Mr. Long’s counsel also admitted “there’s no disputing that” the K-9 officer tracked someone.
Multiple officers set up a perimeter around that area, and inside that perimeter, moments later, Ms. McGowan saw a man on her screened-in back lanai that faced the wooded area of the neighborhood. She described the man on her lanai as very dirty, so dirty that she thought he was dark-skinned; and- she saw him rummaging around and then using a pool towel to clean himself off. Mr. Long does not dispute that he was this person in Ms. McGowan’s screened-in lanai, does not dispute that he wiped his hands on a towel, and does not dispute that his socks were wet. Nor does he dispute that when he saw that Ms.- McGowan saw him, he ran away. He does not dispute that he left behind what Ms. McGowan described as “very yucky” socks, one of which tested overwhelmingly positive for Mr. Long’s DNA. His counsel admitted, “He left his socks, and there is no dispute that he left his socks there.” When he was arrested, he was covered in mud and was wearing shoes but no socks. He does not dispute that it was wrong, and a trespass (on which the jury was instructed correctly' as a lesser included óffensé), for him to be on Ms. McGowan’s lanai.
. Rather than dispute that someone committed the act of resisting by fleeing or eluding, Mr. Long’s defense was identity, just as he argued identity as a defense to the Webb burglary. His counsel argued that “Mr. Long is -not the person that [Officer Baker] saw earlier,” and “I would submit to you and I would argue that he [Mr. Long] is not the person that he [Officer Baker] saw running away from that house.” Counsel further argued, “But we already know that the person that Officer Baker saw wasn’t Mr. Long. It wasn’t the same person, so there is no resisting charge.” ■ Mr. Long’s counsel admitted that the K-9 officer was tracking someone, but that the dog “can’t tell us anything about the identity of the individual. She [the dog] is telling us that there is an *121 individual but not the identity of the individual.”
Because Mr. Long conceded that' the crime of resisting occurred, and "argued only lack of evidence identifying him as the individual who committed that crime, we should deny the petition as to Count II as well as Count I. See Battle v. State, 911 So.2d 85, 89 (Fla.2005) (holding rió dispute as to an element of the crime arises “when mistaken identity is the sole defense and the' facts of the crime are conceded by the defendant”). Both parties below argued that resisting was the crime other than burglary or trespass that satisfied the intent element of burglary as to Ms.' McGowan’s residence. There was no dispute that a man, whom Mr. Long asserted was someone other than himself, committed the offense of resisting. Whether the perpetrator of resisting was Mr. Long or not was a jury question, which the jury resolved against Mr. Long even though the jury was instructed on the lesser included offense of trespassing and could have concluded that only trespassing occurred át the McGowan residence. Importantly, the fact that Mr. Long was willing to admit to trespassing as a lesser included offense does not change the fact that it was undisputed that another offense separate from burglary itself — resisting arrest — was committed. The only dispute was identity of the perpetrator, just as that was the only dispute with respect to the burglary of the Webb residence. Thus, Battle applies; and on these facts, the performance of Mr. Long’s appellate counsel did not “compromise[ ] the appellate process to such a degree as to undermine' the confidence in the fairness and correctness of the appellate result.” Downs v. Moore, 801 So.2d 906, 909 (Fla.2001) (quoting Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985)). Given the overwhelming amount of evidence of Mr. Long’s guilt, his appellate counsel could reasonably have concluded that any error in the jury instructions did not “réach' down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” State v. Delva, 575 So.2d 643, 644-45 (Fla.1991).
Even if the facts of the McGowan burglary did not bring this count within the Battle exception, however, the instruction given would be acceptable under the reasoning of Freeman v. State, 787 So.2d 152, 153 (Fla. 4th DCÁ 2001) (concluding that any error in an instruction referring to intent to commit “the offense of burglary” was cured by the remainder of the instruction’s specific reference to theft as the required offense). .Here, the trial court correctly instructed the jury that “intent to comrriit an offense ” in the structure was an element of the crime of burglary, coupled with the correct instruction that the entry into the structure “is sufficient if the defendant, with the intent to commit a crime, extends any part of his body into the structure.” (Emphasis added.) The subsequent reference to committing “burglary” occurred only within the portion of the instruction informing the jury what would not be sufficient evidence to convict the defendant: “Even though an unlawful entering or remaining in a structure is proved, if the evidence does not establish that it was done with the intent to commit burglary, the defendant must be found not guilty of burglary.” (Emphasis added.) This was an accurate representation of the point of law that burglary is a specific intent crime. M.H. v. State, 936 So.2d 1, 3 (Fla. 3d DCA 2006) (noting statutory definition of burglary explicitly makes burglary a specific intent .crime).
This part of the instructions focused the jury’s attention on whether the state had proved that the defendant had entered Ms. McGowan’s lanai with the specific intent to *122 commit burglary — which the trial court had just correctly defined as requiring intent to commit “an offense” or “a crime” in the -entered structure. The requirement of proving some offense or crime other than burglary or trespass was further made clear in the presentation of a separate instruction on trespass. In addition, counsel for both parties made it clear in closing arguments that an offense other than burglary or trespass was at issue, with the state specifically arguing that resisting was the crime at issue, and the defense specifically arguing that Mr. Long could not be found guilty of resisting because the state had not established that he could be identified as the individual who ran away from Officer Baker at the Webb residence after being commanded to stop.
This case spotlights an issue that appears to have .been caused in part by — and perhaps could .be cured or substantially reduced by — a change in the standard jury instruction for burglary. The pertinent part of the statute itself has remained unchanged for decades, defining the intent element of burglary as “the intent to commit an offense therein [within a dwelling, structure, or conveyance] —” § 810.02(l)(a), (b), Fla. Stat. (2015) (emphasis added). The identity of the specific offense intended to be committed is secondary, so long as there is evidence from which the jury can find the requisite intent to commit an offense:
We recently held in L.S. v. State, 464 So.2d 1195 (Fla.1985) that the exact nature of the offense alleged is surplusage so long as the essential element of intent to commit an offense is alleged and subsequently proven. Id. at 1196. In L.S., we said that the state may rely on section 810.07, Florida Statutes (1983), the burglary presumption of intent statute, whether or not the state had charged a defendant with the intent to' commit a specified crime within the structure. We reiterate that beyond allegation and proof of unauthorized entry or remaining in a structure or conveyance, the essential element to be alleged and proven on a charge of burglary is the intent to commit an offense, not the intent to commit a .specified offense, therein. See, § 810.02, Fla.Stat. (1983).... It is clear, then, that in a charge of burglary the requirement of proving intent to commit a specified crime to the exclusion of all. others, while once a proper element of the charge, is no longer necessary.
Toole v. State, 472 So.2d 1174, 1175-76 (Fla.1985) (citing State v. Waters, 436 So.2d 66 (Fla.1983) (holding that it is not necessary for an information charging burglary to allege the specific crime intended)); see also Joseph v. State, 965 So.2d 357, 358 (Fla. 4th DCA 2007) (“There is no requirement that the state allege and prove that entry was made with the intent to commit a specific offense; however, even when it does so allege, so long as it also charges and proves “the essential element of intent to commit an offense,” the specific allegation is considered surplus-age.”) (quoting Toole, 472 So.2d at 1175); Perreault v. State, 831 So.2d 784, 786 (Fla. 5th DCA 2002) (“Although it is not necessary to instruct the jury on the specific offense which the defendant intended to commit within the structure, it is necessary for the jury to find that the defendant entered the premises to commit an offense therein.”). This principle is also evident from the very existence of section 810.07 of the Florida Statutes, which with respect to both burglary and attempted burglary, recognizes that the very act of entering “stealthily and without consent” constitutes prima facie evidence of the requisite intent: “proof of the entering of such structure or conveyance at any time stealthily and without consent of the owner *123 or occupant thereof is prima facie evidence of entering with intent to commit an offense.” § 810.07, Fla. Stat. (2015). .
Things seem to go awry when courts try to follow the standard jury instruction for burglary, which-since 1981 has expected the trial court- to name a specific offense within the intent element of burglary. In 1981, this was the pertinent part of..the standard jury instruction for burglary:
At the time of [entering] [remaining in] the [structure] [conveyance] (defendant) had a fully-formed, conscious intent.to commit the offense of (crime alleged) in that [structure] [conveyance]. r,.
Note to Judge: Define the offense that was the object of the burglary.
See Standard Jury Instructions in Criminal Cases, at 194 (1981) (quoted in Standard Jury Instructions in Criminal Cases — Submission 2002-1, 850 So.2d 1272 (Fla.2003)). This remained the recommended instruction language (except for amendments to set forth the “remaining in” instructions separately), except that the helpful “Note to Judge” was deleted from the “entering” part of the instruction in 2003. See Standard Jury Instructions, 850 So.2d at 1280.
In the 2007 amendments, the intent element was changed to include two bracketed suggestions plus a separate note advising that the offense could not be trespass or burglary:
At the time of [entering] the [structure] [conveyance], (defendant) had the intent to commit [an offense] [(the crime alleged) ] in that [structure] [conveyance].

The offense intended cannot be trespass or burglary.

See In re Standard Jury Instructions in Criminal Cases—Report No. 2006-2, 962 So.2d 310, 321 (Fla.2007). It was around this time that decisions started appearing to deal with the confusion generated by the task of filling in the blanks correctly. Perhaps in an attempt to stem the tide of confusion, the instruction was amended again in 2013, as follows, to emphasize that the -“an offense” blank should contain the name of a specific offense other than burglary or trespass: > .
At the time of [entering] the [structure] [conveyance], (defendant) -had the intent to commit [ (the crime, alleged) ] [an. offense other than burglary or trespass] in that [structure] [conveyance]. .
See In re Standard Jury Instructions in Criminal Cases—Report No. 2012-01, 109 So.3d 721, 723-24 (Fla.2013). The 2013 amendment then repeated the separate reminder that “The offense intended cannot be trespass or burglary.” Id. at 724. This is the instruction in effect today.
Here, the trial court used the following customized instruction (which is permissible): “At the time of entering' the structure, [Mr. Long] had the intent to commit an-offense in that structure.” This language is commendable 'for its simplicity and its adherence to the language of the statute. The trial court further instructed, correctly, that “[i]t is sufficient if the defendant, with the intent to commit a crime; extends any part of his body into the structure.” Again, the reference tó “a crime” is accurate, consistent with the statute and cases such as Waters and Toole, and not confusing. But the instruction then advised the jury that the lack of evidence of intent would require that the jury acquit Mr. Long: “Even though .an unlawful entering or remaining in a structure is proved, if the evidence does not establish that it was done with the intent to commit burglary, the defendant must be found not guilty of burglary.” This is what triggered the parties’ present discussion of the “circular instruction” argument.
The problem with the “circular instruction” argument, although it has facial ap *124 peal, is that the statute does not require that the jury be formally “instructed” on a specifically named offense at all. Toole, 472 So.2d at 1175-76; Waters, 436 So.2d at 68; Joseph, 965 So.2d at 358; Perreault, 831 So.2d at 786. It is likewise not necessary to define or instruct the jury on the elements of the offense. Grant v. State, 420 So.2d 903, 903 (Fla. 1st DCA 1982) (relying on Taylor v. State, 386 So.2d 825, 829 (Fla. 3d DCA 1980) (rejecting argument that court must instruct jury on each element of the subsumed offense)).
As the court in Waters noted in the context of the charging document, it became the practice to name the offense that the burglary defendant intended to commit in the entered structure, probably in cases in which it was clear what offense the defendant allegedly intended to commit and in which there was only one probable offense at issue. Waters, 436 So.2d at 68. But naming the offense is problematic with respect to the question of intent, which is intangible and not readily susceptible of proof by direct evidence; and equally problematic, when the evidence would support a conclusion that the defendant could have intended to commit any one or more of multiple offenses. The prosecutor might see the evidence as demonstrating intent to commit theft, and the jury might see evidence of intent to commit assault, murder, arson — or be uncertain what the defendant was up to, but be convinced of intent to commit some offense. See Duncan v. State, 606 So.2d 1227, 1229 (Fla. 4th DCA 1992) (“In many instances, the state does not know the exact offense intended by the-defendant.”). Intent to commit an offense is enough under the statute. See § 810.07(1), Fla. Stat. (2015) (entering “stealthily and without consent ... is pri-ma facie evidence of entering with intent to commit an offense”).
While the jury instructions committee likely has had very good reasons for the specific language it has recommended in burglary cases (though the rationales are not published), it would appear that the present language is more confusing than helpful. 'It seems to have generated a cottage industry in parties raising, and courts resolving, the “circular instruction” argument, which is occurring unnecessarily in light of 'the simple and straightforward requirement of the statute itself and the establishment of a prima facie case under section 810.07. As the supreme court always cautions 'when approving amendments to the standard instructions, “In authorizing the publication and use of these instructions, we express no. opinion on their correctness and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of the instructions.” Standard Jury Instructions, 109 So.3d at 722. Perhaps it would be a good idea to revert to a simpler time, with an instruction that tracks the language of the statute, and at most adds that the offense must be one other than burglary itself or trespass, such as the following:
At the time of entering the [structure] [conveyance], (defendant) had the intent to commit an offense other than burglary or trespass in that [structure] [conveyance].
This would eliminate the apparently confusing, and unnecessary, dual fill-in-the-blanks brackets in the current instruction. The state would then bear the burden of presenting evidence of intent to commit a specific offense or offenses other than burglary, and trespass, and arguing to the jury that such evidence satisfies the statutory definition of burglary; whereupon the jury *125 must find that the defendant had the requisite intent. ■